IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Case No. 10-cv-01486-WJM

In re:  TIMOTHY GEMELLI and
KIMBERLY GEMELLI,

Debtors.

TIMOTHY GEMELLI and
KIMBERLY GEMELLI,

Appellants,

v.

SALLY ZEMAN, Chapter 13 Trustee,

Appellee.

---

## ORDER AFFIRMING BANKRUPTCY COURT'S ORDER DENYING CONFIRMATION OF THE DEBTORS' CHAPTER 13 PLAN

---

Debtors Timothy and Kimberly Gemelli ("Debtors" or "Gemellis") appeal from the Bankruptcy Court's March 31, 2010 Order denying confirmation of their Chapter 13 bankruptcy plan.  For the reasons set forth below, the Bankruptcy Court's Order is AFFIRMED.

## I.    BACKGROUND

Debtors Timothy and Kimberly Gemelli filed their petition for Chapter 13 bankruptcy on October 24, 2008 along with a proposed Plan (the "Original Plan").  (Rec. at 1 & 2.)[1]  Debtors' Schedule A stated that they had a residence in Longmont,

---

[1]  References to the Bankruptcy Record are cited as (Rec. __.).  References to filings made in the District Court are cited as (ECF No. __.).

Colorado that they "owned jointly with father."  (Rec. 1 at 12.)  Schedule A described the nature of the Debtors' interest in this property as "Tenancy in Common" and classified the residence as joint property.  (*Id*.)  The amount of the secured claim listed on their Schedule A was "0.00."  (*Id*.)

Debtors' Schedule D listed Chase Mortgage as a secured creditor.  (Rec. 1 at 17.)  With respect to the nature of the lien held by Chase Bank, Schedule D stated: "Debtors are not on the loan, but they are on the title".  (*Id*.)  The amount of Chase Bank's claim was described as "unknown" and the space for "unsecured portion" of the debt was left blank.  (*Id*.)  On Schedule H, the Debtors were instructed to provide the information for any person that is also liable on any debts listed by the debtors in the other schedules.  The Debtors' Schedule H listed "Charles J. Gemelli[,] Father" as codebtor on the Chase Mortgage.  (Rec. 1 at 33.)

Debtors' Schedule F listed approximately seventy unsecured creditors with claims totaling $174,122.67.  (Rec. 1 at 31.)

The Trustee objected to confirmation of the Original Plan[2] (Rec. 13) and confirmation of the Plan was denied by the Court on January 5, 2009.  (Rec. 15.)

The Debtors filed an amended plan on January 20, 2009 ("Amended Plan"). (Rec. 17.)  The Trustee objected to the Amended Plan in part because the amount of the debt on the Chase Mortgage was unknown.  The Trustee also asserted that a

---

[2]  Throughout the proceedings in the Bankruptcy Court, an individual named John Sions II filed numerous claims and objections to the proceedings.  Because Mr. Sions's objections did not factor into the Bankruptcy Court's ultimate decision denying confirmation of the Plan, the Court will not discuss them here.

number of inconsistencies in the Debtors' filings brings into question whether the Amended Plan was filed in good faith.  (Rec. 22.)  The Debtors filed an Amended Schedule A stating that their residence was "owned jointly with father; however, debtors are not liable on any mortgages."  (Rec. 61 at 1.)  It described the Debtors' interest in the property as "Tenancy in Common" and stated that their interest in the property was joint.  (*Id*.)  The value of the residence was listed as $ 380,000.  (*Id*.)  Confirmation of the Debtors' Amended Plan was denied on July 13, 2009 without hearing.  (Rec. 75.)

On July 30, 2009, the Debtors filed their Second Amended Chapter 13 Plan ("Plan").  (Rec. 82.)  The Plan proposed that the Debtors would pay $54,889 on secured claims, $1,665 on unsecured claims, and $34,380 in taxes.  (*Id*. at 1.)  It also proposed that, outside of the Plan, the Debtors would pay Chase Mortgage $ 2,724 a month for the Debtors' residence and specified that the loan was "not in debtors' names.  (*Id*. at 4.)  The Plan stated that the Debtors would maintain insurance on their residence "to protect the liens of creditors holding secured claims."  (*Id*. at 5.)

The Trustee objected to the Plan.  (Rec. 94.)  The Bankruptcy Court held an evidentiary hearing on November 13, 2009 at which the Debtors testified.  (Rec. 154.) With respect to his interest in the residence, T. Gemelli testified that his name is on the title but that his mortgage is in his father's name because his father's credit was better that his.  (*Id*. at 52-53.)  T. Gemelli also testified that he makes payments on the $380,000 loan directly to the bank each month and that he "owe[s] the debt on the property" based on an informal agreement with his father.  (*Id*.)

During closing argument, the Trustee raised the issue of whether the Debtors

were eligible for Chapter 13 relief based on the amount of their unsecured debt.  The Trustee argued that, given Tim Gemelli's testimony that he had no legal obligation to pay the Chase Mortgage, it could be construed as unsecured debt.  If the Chase Mortgage was unsecured debt, the Debtors would be over the limits of 11 U.S.C. §109(e).  (Rec. 154 at 95-96.)  The Bankruptcy Court ordered the parties to file supplemental briefs on this issue and took the matter under advisement.  (Rec. 119.)

The Bankruptcy Court issued its Order denying confirmation of the Debtors' Plan on March 31, 2010.  (Rec. 129.)  The Order found: (1) the Debtors had failed to meet their burden of establishing that they were eligible to proceed under Chapter 13 by showing that they had less than $336,900 in noncontingent, liquidated, unsecured debts; and (2) the Debtors had failed to meet their burden of establishing that the Plan was filed in good faith.  (*Id*.)  These were alternate, independent holdings.  (*See* Rec. 129 at 5 ("Even if the Debtors were eligible, however, the Plan must fail on good faith grounds."))

On April 26, 2010, the Debtors filed a Motion to Reconsider arguing: (1) that the Trustee waived the issue of eligibility by not raising the issue until closing arguments at the evidentiary hearing; (2) the Bankruptcy Court should have taken further evidence before making a determination on the Debtors' eligibility under § 109(e); and (3) the Debtor should be given another chance to propose a confirmable Plan rather than have to convert their claim to Chapter 7 or dismiss their case.  (Rec. 138.)  The Bankruptcy Court denied the Motion to Reconsider finding that the Trustee's amendment of her objection to the Plan was allowed under Fed. R. Civ. P. 15 and that the Debtors had not stated what new evidence would be presented if the evidentiary hearing were to be

4

reopened.  (Rec. 139.)

On June 23, 2011, Debtors filed their Notice of Appeal and Election to have the case heard by the District Court.  (Rec. 145 & 146.)  The Debtors' Opening Brief was filed on September 14, 2011.  (ECF No. 12.)  The Trustee's Opposition Brief was filed on November 9, 2011.  (ECF No. 19.)  The Debtors' Reply Brief was filed on January 10, 2011.  (ECF No. 26.)   The Court held oral argument on June 7, 2011 and the appeal was taken under advisement.  (ECF No. 31.)

## II.  LEGAL STANDARD

In reviewing a bankruptcy court's decision, the district court functions as an appellate court and is authorized to affirm, reverse, modify, or remand the bankruptcy court's ruling. 28 U.S.C. § 158(a); Fed. R. Bankr. P. 8013.  As the appellate court, the district court has discretion to affirm "on any ground adequately supported by the record, so long as the parties have had a fair opportunity to address that ground." *Maldonado v. City of Altus*, 433 F.3d 1294, 1302-03 (10th Cir. 2006).

A bankruptcy court's legal conclusions are reviewed *de novo*, and factual findings are reviewed for clear error.  *In re Warren*, 512 F.3d 1241, 1248 (10th Cir. 2008).  On mixed questions of law and fact, the Court reviews *de novo* any question that primarily involves the consideration of legal principles, and applies the clearly erroneous standard if the mixed question is primarily a factual inquiry.  *In re Wes Dor*, Inc., 996 F.2d 237, 241 (10th Cir. 1993).

### III.  ANALYSIS

The Bankruptcy Court denied confirmation of the Debtors' Chapter 13 Plan on two grounds: (1) its finding that the Debtors had failed to meet their burden of showing eligibility for Chapter 13 relief under 11 U.S.C. § 109(e); and (2) its finding that Debtors had failed to meet their burden of showing that the Plan was proposed in good faith pursuant to 11 U.S.C. § 1325(a)(3).

On appeal, the Debtors have argued that the Bankruptcy Court erred in: (1) finding that the mortgage debt was an unsecured debt; (2) finding that the Debtors' Plan was filed in bad faith; (3) allowing the Trustee to amend her objections under Federal Rule of Civil Procedure 15; (4) finding that the Trustee did not waive her objection to § 109(e) eligibility; and (5) refusing to confirm Kim Gemelli's Plan separate from Tim Gemelli's Plan.  (App. Br. (ECF No. 12) p. 6.)

Because, as discussed below, the Court concludes that the Bankruptcy Court's finding with respect to whether the Debtors' Plan was filed in good faith was not clearly erroneous, it need not address the Bankruptcy Court's independent finding regarding Debtors' failure to satisfy their burden of showing Chapter 13 eligibility under Section 109(e).  The Court's conclusion regarding the Bankruptcy Court's good faith finding also eliminates the need to address the Debtors' argument on appeal that the Trustee waived the right to raise the eligibility issue and that the Bankruptcy Court erred in allowing the Trustee to amend her objections to include an argument regarding the Debtors' eligibility.  Accordingly, the Court will address only the Debtors' argument regarding the Bankruptcy Court's finding with respect to the good faith filing of their Plan, and the refusal to confirm Kim Gemelli's Plan separately from Tim Gemelli's Plan.

6

**A.      Good Faith**

The Debtors argue there was no evidence in the record to support the

Bankruptcy Court's finding that the Plan was not proposed in good faith.  (App. Br. at

15.)  Whether a Chapter 13 plan has been proposed in good faith is a factual question

which is subject to the clearly erroneous standard of review.  *In re Robinson*, 987 F.2d

665, 668 (10th Cir. 1993).  "A finding is 'clearly erroneous' when although there is

evidence to support it, the reviewing court on the entire evidence is left with the definite

and firm conviction that a mistake has been committed."  *United States v. United States*

*Gypsum Co.*, 333 U.S. 364, 395 (1948).

The Bankruptcy Code provides that the bankruptcy court shall confirm a plan if

"the plan has been proposed in good faith and not by any means forbidden by law."  11

U.S.C. § 1325(a)(3).  Good faith is evaluated on a "case-by-case basis" by examining

the totality of the circumstances.  *Flygare v. Boulden*, 709 F.2d 1344, 1347 (10th Cir.

1983) (quoting *In re Estus*, 695 F.2d 311, 315 (8th Cir.1982)). In *Flygare*, the Tenth

Circuit adopted a nonexhaustive list of eleven relevant factors to guide courts in their

determination of good faith:

> (1) the amount of the proposed payments and the amount of
> the debtor's surplus;
> (2) the debtor's employment history, ability to earn and
> likelihood of future increases in income;
> (3) the probable or expected duration of the plan;
> (4) the accuracy of the plan's statements of the debts,
> expenses and percentage repayment of unsecured debt and
> whether any inaccuracies are an attempt to mislead the
> court;
> (5) the extent of preferential treatment between classes of
> creditors;
> (6) the extent to which secured claims are modified;

> (7) the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7;
> (8) the existence of special circumstances such as inordinate medical expenses;
> (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;
> (10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and
> (11) the burden which the plan's administration would place upon the trustee.

*Flygare*, 709 F.2d at 1347–48.  The weight given to individual factors will vary with the circumstances of each case. *In re Young*, 237 F.3d 1168, 1175 (10th Cir. 2001).  In addition to the *Flygare* factors, the bankruptcy court may consider other relevant circumstances, including any that may indicate the debtor has "unfairly manipulated the Bankruptcy Code." *In re Rasmussen*, 888 F.2d 703, 704 n.3 (10th Cir. 1989).

With respect to good faith, the Bankruptcy Court found: "the lack of clarity as to who owns the Gemellis' residence and the nature of the obligations on that residence indicate inaccuracy in the Plan's statements of debts and their repayments, and may suggest a preference for one unsecured creditor, T. Gemelli's father, over other unsecured creditors." (Rec. 129 at 5.)  These findings are not clearly erroneous.  On the record before the Bankruptcy Court, the accuracy of the filings was substantially called into question by both the inconsistencies between the various documents and the inconsistencies between the documents and T. Gemelli's testimony at the evidentiary hearing.  For example, Debtors' Amended Schedule A states that they are not liable on any mortgages (Rec. 61) while Schedule H lists Charles Gemelli as a "co-debtor" with the Debtors on the mortgage.  (Rec. 1 at 33.)  Debtors' Schedule D listed Chase Mortgage as a secured creditor (Rec. 1 at 17) but their Plan listed no secured

claims.  (Rec. 82 at 3.)  These are but two examples of inconsistencies in the record regarding the nature of the Debtors' interest in the mortgage.

Moreover, the Plan provides that the Debtors will make payments of $2,724 a month directly to Chase Mortgage for their residence.  (Rec. 82 at 4.)  This payment is on a debt which, according to Tim Gemelli's testimony, the Debtors have no legal obligation to pay.  (Rec. 154 at 52.)  Meanwhile, the remaining unsecured creditors will be paid a total of $1,665 through the Plan on their debt of nearly $175,000.  (*See* Rec. 1 & 82.)  Given this evidence, the Court's finding that the Plan suggests a preference for one unsecured creditor over others in the same class is not clearly erroneous.

The Bankruptcy Court also found that the Debtors had negligently prepared their documentation filed in support of the Plan.  (Rec. 129 at 6.)  Given the inconsistencies found in the record with respect to the Debtors' interest in their residence, this finding is not clearly erroneous.

The Debtors argue that the Bankruptcy Court erred because it did not consider all of the *Flygare* factors.  Debtors contend that the Bankruptcy Court "obsessed over factor 4 only, namely, the accuracy of the plan's statements of the debts."  (App. Br. at 15-16.)  Initially, the Court notes that many of the factors that the Bankruptcy Court did not explicitly consider simply do not apply here.  For example, factor eight advises that the Bankruptcy Court should consider the existence of special circumstances such as inordinate medical expenses.  The medical expenses listed on the Debtors' Schedule F total approximately five percent of the unsecured debts and there do not appear to be any other special circumstances.  (*See* Rec. 1 at 29.)  Thus, the fact that the Bankruptcy Court failed to explicitly consider a number of the *Flygare* factors—including

9

factor eight—does not show that it erred in finding that the Plan was not proposed in good faith.

There is no doubt that the accuracy of the Debtors' statements via their Schedules and testimony certainly played a large role in the Bankruptcy Court's good faith determination.  But the Bankruptcy Court also considered a number of other *Flygare* factors.  It also explicitly considered whether the Plan was placing one unsecured creditor above others in the same class, which is factor five in the *Flygare* analysis.  Additionally, the Bankruptcy Court found that the Debtors appeared to be "trying to have it both ways.  They wish to pay the debt to Chase on behalf of the true obligor, T. Gemelli's father (presumably with disposable income which should be deducted to pay their legitimate unsecured creditors), but also wish the debt not to be considered in connection with their eligibility."  (Rec. 129 at 6.)  This finding goes to at least two additional *Flygare* factors:  factor one involving whether the Debtors are paying all of their disposable income into the Plan; and factor ten—the sincerity and motivation of the debtor.   With respect to factor ten, the Bankruptcy Court also found that the Debtors' Plan included "questionable conduct by the Gemellis in making payments on a loan for which they have shown no legal obligation."  (Rec. 129 at 6.) Therefore, it is readily apparent that the Bankruptcy Court analyzed more than just factor four in its *Flygare* analysis.

Moreover, in 1984—the year after the Tenth Circuit issued *Flygare*—Congress passed the Bankruptcy Amendments and Federal Judgeship Act.  This Act added revised Section 1325(b) of the Bankruptcy Code to authorize courts to confirm a plan in which all of the debtor's disposable income for three years is applied to payments.  11

U.S.C. § 1325(b).  In *Education Assistance Corp. v. Zellner*, 827 F.2d 1222 (8th

Cir.1987), the Eighth Circuit considered the effect of the revised Section 1325(b) on the

analysis of good faith.[3]  The Eighth Circuit held that the revised Section 1325(b)'s

"ability to pay" criteria subsumed most of the *Estus* factors (which are the same as

those set forth in *Flygare*) and thus narrowed the focus of the good faith inquiry.  *Id.* at

1227.  The Eighth Circuit described the narrower good faith inquiry as depending upon

"whether the debtor has stated his debts and expenses accurately; whether he has

made any fraudulent misrepresentation to mislead the bankruptcy court; or whether he

has unfairly manipulated the Bankruptcy Code."  *Id.*

Given this narrower good faith analysis, the Bankruptcy Court's decision in this

case was certainly not clearly erroneous.  There are numerous instances in the record

of inconsistencies and inaccuracies.  Many of these inconsistencies could be construed

as attempting to mislead the Bankruptcy Court regarding the Debtors' obligation with

respect to the mortgage on their residence.  The Debtors' proposal to pay the Chase

Mortgage—a debt they provided no evidence showing a legal obligation to pay, and as

to which they specifically denied having any legal obligation to pay—outside of the Plan,

shows a possible attempt to manipulate the Bankruptcy Code.

The law is clear that the determination of whether a plan is filed in good faith is to

be made on a case-by-case basis considering the totality of the circumstances.  The

Bankruptcy Court is not required to go through a rote analysis of each of the eleven

---

[3]  The factors set forth in *Flygare* originally came an Eighth Circuit opinion.  Thus, the Eighth Circuit's analysis of the 1984 Act on its good faith factors applies with equal weight to the *Flygare* analysis.

*Flygare* factors; these factors are intended to be a guide for courts making the good faith determination and are not exhaustive.  *See Flygare*, 709 F.2d at 1347.  Ultimately, the Bankruptcy Court must determine whether "after weighing all the facts and circumstances, the plan is determined to constitute an abuse of the provisions, purpose or spirit of Chapter 13."  *Flygare*, 709 F.2d at 1347 (quoting *Estus*, 695 F.2d at 315-16).  The Bankruptcy Court found that the Debtors had not satisfied their obligation of showing that the Plan was proposed in good faith.  The Court finds that there is sufficient evidence in the record to support this finding and, having reviewed the record, is not left with a definite and firm conviction that an error has occurred.  Accordingly, the Bankruptcy Court's finding with respect to the Plan not being proposed in good faith was not clearly erroneous and therefore must be affirmed.

**B.      Separate Confirmation of Kim Gemelli's Plan**

The Debtors argue that, regardless of whether Tim Gemelli's Chapter 13 Plan was confirmable, there is nothing in the record supporting the Bankruptcy Court's denial of confirmation of Kim Gemelli's Chapter 13 Plan.  (App. Br. at 21.)  The Debtors cite *In re Tabor*, 232 B.R. 85 (Bankr. N.D. Ohio 1999) in support of the argument that Kim Gemelli's Plan can be affirmed apart from her husband.  *Tabor* held that promissory notes that were signed by the debtor-husband could not be included in the debtor-wife's noncontingent, liquidated, unsecured debt for purposes of § 109(e) eligibility.  *Id*. at 90-91.

*Tabor* is distinguishable from this case for a number of reasons.  First, in *Tabor*, there were clear loan documents showing that only the husband was liable for the debt.

In this case, there is no clarity with respect to the Chase Mortgage. There is certainly not clear evidence that Tim Gemelli, as opposed to Kim Gemelli, is liable for the Mortgage. Debtors' Amended Schedule A lists the residence as joint property of the Debtors and as states that the residence is "owned jointly with father; however, **debtors are not liable on any mortgages**". (Rec. 61) (emphasis added). Debtors' Schedule D lists the Mortgage as joint property of the Debtors and states that "**they** are on the title" for the residence. (Rec. 1 at 17) (emphasis added). In fact, none of the documentation filed in support of their bankruptcy petition distinguishes between Kim and Tim Gemelli.

At argument, the Debtors claimed that Tim Gemelli's testimony made it clear that only he has any obligation to pay the mortgage on their residence because he has an agreement with his father. However, the transcript of the evidentiary hearing in this case shows that Tim Gemelli testified that he pays the mortgage because "**we** actually purchased the house." (Rec. 154 at 52) (emphasis added). Therefore, there is no clear evidence showing that Kim Gemelli is not also liable for the mortgage in the same capacity (if any) that Tim Gemelli is liable for the mortgage. This fact alone distinguishes this case from the husband and wife debtors in *Tabor*.

The Debtors brought their bankruptcy case as a joint action and the Plan was proposed as a joint Plan. Nothing in the documentation filed by the Debtors distinguishes between debt owed by Kim as opposed to Tim Gemelli, certainly not with respect to the Chase Mortgage. Most significantly, the Bankruptcy Court's finding with respect to the Debtors having failed to show that their plan was filed in good faith draws no distinction between the Gemellis. As such, there is no indication that the Bankruptcy

Court's finding with respect to lack of good faith did not apply equally to Kim Gemelli as it did to Tim Gemelli.

Because the Bankruptcy Court's finding regarding lack of good faith draws no distinction between Kim and Tim Gemelli, and the Court has affirmed that finding, the Court cannot on the record before it find that it was error to deny confirmation of Kim Gemelli's Chapter 13 Plan.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS that the Bankruptcy Court's denial of the Debtors' Chapter 13 Plan is hereby AFFIRMED.

Dated this 8th day of June, 2011.

BY THE COURT:

_____
William J. Martínez
United States District Judge